## ROSENBAUM v. CECO STEEL PRODUCTS CORPORATION.

### Civ. A. No. 36622.

District Court of the United States for the District of Columbia.

May 6, 1947.

Edward M. Curran and Daniel B. Maher, Washington, D. C., for plaintiff, Harry L. Rosenbaum.

Whiteford, Hart, Carmody & Wilson, Washington, D. C., for defendant, Ceco Steel Products Corporation, formerly Concrete Engineering Company.

PROCTOR, District Judge.

Petitioner files this action pursuant to the provisions of the Selective Training and Service Act of 1940, as amended, 50 U.S.C. Appendix, § 308(e).

By his complaint, petitioner seeks a judgment requiring the respondent corporation to reinstate him to his former position, in conformity with the terms and conditions of the contracts between petitioner and respondent, and further that the respondent be required to pay commissions, which petitioner alleges have accrued to him from the date of his requested reinstatement, and an accounting for all commissions due petitioner during the aforesaid period.

The case was advanced for hearing, and the court after considering the pleadings, stipulations of counsel, exhibits and testimony makes the following findings of fact.

1. Petitioner, Harry L. Rosenbaum, is a citizen of the United States and a resident of the city of Roanoke, Virginia. On July 20, 1942, petitioner entered the Chemical Warfare Service, U. S. Army, and was discharged therefrom on December 20, 1945. On December 31, 1945, petitioner addressed a letter to respondent requesting reinstatement, which request was denied by respondent.

2. Respondent, Ceco Steel Products Corporation, was incorporated under the laws of the State of Nebraska on July 27, 1914, under the name Concrete Engineering Company. On June 26, 1937, respondent's name was changed to Ceco Steel Products Corporation.

3. Petitioner, since 1920 has been engaged in business as a manufacturer's representative, with his office and headquarters at Roanoke, Virginia. He has conducted

such business under the style either of "Harry L. Rosenbaum" or "Harry L. Rosenbaum, trading as Roanoke Engineering Sales Company", or both.

4. On March 27, 1936, petitioner, under the name and style of Roanoke Engineering Sales Company, and respondent entered into a written contract, under the terms of which petitioner was appointed by respondent to act as the latter's exclusive representative to solicit orders for certain steel products of respondent, consisting principally of round bar and angle joists, through agents which petitioner should appoint, such appointment being subject to the approval of respondent. The territory in which petitioner was to operate was definitely fixed by the terms of the contract in question and covered all of Virginia, except the counties of Frederick, Clark, Loudon, Fairfax, Prince William, Fauquier, Warren, Shenandoah, Page, Madison, Rappahannock, Culpeper and Stafford; the States of North Carolina and South Carolina.

The foregoing contract was executed by the parties after negotiations during which petitioner suggested changes in the form and content thereof, including a requirement by petitioner that if respondent cancelled the agreement, that all agencies created for the respondent should be cancelled at the same time, and the respondent would not renew any agreement with said agents for a period of not less than nine months from date of cancellation. The court finds that in negotiating and executing this contract, the parties dealt at arm's length.

5. On September 24, 1938, petitioner under the name and style of "Roanoke Engineering Sales Company by H. L. Rosenbaum" and respondent entered into another written contract, in the form of a letter, under the terms of which petitioner was appointed exclusive representative for respondent to solicit orders for certain other products of respondent, consisting principally of steel windows and doors, through agents appointed by petitioner to act directly for respondent, subject to the latter's approval and acceptance of such agents and the orders sold by them. The territory covered by said contract embraced all of Virginia except the counties of Frederick, Clark, Loudon, Fairfax, Prince William, Fauquier, Warren, Shenandoah, Page, Madison, Rappahannock and Culpeper; also that portion of southern West Virginia lying south of the C. & O. Railroad except the counties of Putnam, Cabell, Lincoln and Wayne; also that portion of the state of Tennessee east of and including the following counties: Hamilton, Bledsoe, Cumberland, Fentress and Pickett. The court finds that the states of North and South Carolina were also included in the territory covered by this contract, but the same were omitted from its provisions through inadvertence when the contract was originally prepared, but the petitioner noticed the omission on or about October 31, 1938, and called the same to respondent's attention and the latter thereupon agreed to the inclusion of said two states in addition to the territory hereinbefore specified.

Prior to entering into said contract, the petitioner and respondent had numerous conferences, and a great deal of correspondence was exchanged by the parties as to its terms, particularly as to the territory to be covered, and the method and amount of compensation to be paid thereunder.

During the initial stages of the negotiations, there was prepared in petitioner's office, on his typewriter, on a letterhead of the "Roanoke Engineering Sales Company", a memorandum stating that it was the intent of the parties that the relationship between petitioner and respondent was to be, in effect, that of an independent contractor rather than an employee of respondent. This memorandum was prepared by petitioner in collaboration with a representative of respondent, who had been sent to Roanoke to discuss terms with petitioner.

While the contract in the form of a letter is dated September 8, 1938, and purports to have been accepted by petitioner on September 24, 1938, the court finds that the parties did not agree as to all of its terms until the latter part of October 1938, and that from August 1938 to and including October 1938, the parties were negotiating as to the terms and conditions of said contract, during which the parties dealt at arm's length.

During such negotiations, the petitioner requested that the respondent furnish stationery showing the name of petitioner as "District Manager" of respondent, but the latter refused to do so and furnished instead stationery bearing petitioner's name and address in the top center thereof, and in the upper left hand corner, "Sales representative Ceco Steel Products Corporation", and in the upper right hand corner, "Steel windows, Metal Frames, Screens, Metal Weatherstrips, Standard Joists and Long-span Joists."

6. On May 29, 1939, respondent suggested the elimination of West Virginia and Tennessee from the petitioner's contract, but petitioner refused to eliminate said states from the operation of said contract.

Again on July 15, 1940, respondent suggested the elimination of Charleston, West Virginia from the operation of the window and door contract dated September 24, 1938, but petitioner refused to agree to such elimination.

On October 28, 1940 and again on November 1, 1940, respondent wrote petitioner of its intention to cancel both contracts, ascribing as a reason inactive coverage and excessive sales costs, and after correspondence between the parties, petitioner agreed on February 14, 1941, to the elimination of West Virginia from the window and door contract dated September 24, 1938.

7. On August 6, 1942 and August 11, 1942, respondent wrote to petitioner cancelling both contracts, and at the same time also cancelled contracts with the agents appointed by petitioner, with the approval of respondent.

8. Petitioner at all times mentioned herein, in addition to acting as sales agent for the respondent, was the exclusive agent for manufacturers of other building products not related to the products of the respondent, but did not during the interval March 27, 1936 to August 6, 1942 inclusive, represent manufacturers other than respondent, of products covered by the contract of March 27, 1936, and did not during the interval September 24, 1938, to August 6, 1942, represent manufacturers other than respondent, of products covered by the contract of September 24, 1938.

9. Petitioner received as his only compensation from respondent a commission on the selling price of sales under the contracts dated March 27, 1936, and September 24, 1938, in the territory covered by such contracts. Petitioner maintained his own independent office, in which he carried on his business of representing respondent and other manufacturers. Petitioner hired, fired and paid the employees of such office, furnished his own equipment, and paid all of his own expenses including, without limitation, rent, office supplies, travelling and other expenses without reimbursement therefor from respondent.

10. Respondent did not at any time pay any Old Age Benefit Tax or Unemployment Compensation Tax on the commissions paid to petitioner, under any social security law, or unemployment compensation act, nor were any employee contribution deductions made from such commissions on account of any such act. The benefits of compensation insurance were not extended to petitioner by respondent, and the commissions paid to petitioner by respondent were not included in the basis for determining premiums under any compensation or liability insurance policy carried by respondent. Respondent at all times herein mentioned maintained a group insurance plan for its employees, and at no time were the benefits of such plan made available to petitioner.

11. The petitioner, Harry L. Rosenbaum regularly paid from his own resources to the state of Virginia at all times herein mentioned, the wholesale merchandise broker's license tax on commissions received from respondent.

12. Whenever during the operation of the contract of September 24, 1938, a purchaser of products covered therein desired to purchase the products installed in place, the contract or arrangements for such erection was entered into between the purchaser and the petitioner, who hired persons to make such installation, paid their wages, deducted Federal Old Age Benefit Tax from and carried workmen's compensation and unemployment compensation insurance coverage on such persons.

13. As to both contracts, petitioner was free to solicit orders at whatever time and

manner he chose and from whatever customers he selected, and respondent did not direct or control petitioner in regard to what customers he should solicit, or as to the time, place or manner of such solicitation. Petitioner determined his own hours and plan of work, his own schedules, sales routes and itineraries. Orders were solicited on open account and were subject to refusal by respondent. Petitioner was not required to, nor did he, spend full time or any particular time in the sales work of respondent's products covered by the two contracts, and petitioner determined the amount of time he would spend on such work, and the amount of time he would spend on the work of the other manufacturers which he then represented.

14. Respondent's office was not petitioner's headquarters, and he visited respondent's office whenever it was convenient for him to do so, and such visits as were made were on a voluntary basis and not at the request of the respondent. Petitioner was not required to attend any regular or scheduled sales meetings of respondent, and no sales quota was imposed upon him by respondent.

15. Commencing in the spring of 1942, the respondent became engaged in war work and during July, August and September, 1942, cancelled all agency contracts because of the scarcity or non-availability of materials, particularly windows.

16. In 1943 respondent had formulated a post war planning program, having for its object, after the end of hostilities, increased tonnage and the streamlining of sales and changes in methods of selling; that such program included the establishment of a branch office in Washington, D. C. This branch office covers the same territory as that previously covered by the contracts with petitioner, with the exception of the state of Tennessee. In addition, the territory of such branch office also embraces the states of Maryland, all of Virginia, Delaware and the District of Columbia. Such office was established in 1943, and the branch manager thereof operated for a time from a local hotel due to the inability of respondent to locate an office in the District of Columbia; that respondent eventually located offices and signed a lease

therefor for three years with an option for two additional years and moved into and occupied said premises on or about December 20, 1945, where it conducts its business in the territory aforesaid. That said office is in charge of a branch sales manager who is paid on a salary basis by respondent, and all of the expenses of such office, including the rents, supplies, telephone, salaries of employees, are paid by respondent and all of the activities thereof and the employees therein, including the manager, are under the direction and control of respondent; that such branch office handles all of the products of respondent as contrasted to the limited number covered by the contracts with petitioner; that all sales in the territory are under the supervision and control of the branch manager in the Washington office, and said manager is charged with the duty and responsibility of promoting the sale of all of respondent's products in said territory; that when petitioner was sales agent for respondent, the estimates were sent to respondent's home office in Chicago, where such estimates were priced and sent back to the agent. If respondent were the successful bidder, plans would be obtained by the agent and sent to Chicago, where the respondent's engineers analyzed and checked said plans, and all bills were sent from Chicago. Under respondent's present operations, the pricing of estimates, the checking of plans by engineers, and all correspondence are carried on by employees in the Washington branch office, and all bills are sent from that office.

17. Respondent operates in 26 states of the Union, and in its entire organization it did not have, nor does it now have, any contracts similar to the contracts which it had with petitioner, and respondent does not now have available in its organization any position similar to the one occupied by petitioner herein. The court furthermore finds that it would not be possible, under respondent's present organizational set-up, to have the petitioner act as sales representative, handling only a comparatively few of respondent's products on a part time basis, when it has an office with its own employees who are subject to its direction and control, handling all of the respondent's products and doing all of the work previous-

ly performed by petitioner in the territory specified in petitioner's contracts, and that it would be unreasonable to require respondent to restore petitioner as prayed in his complaint.

Based upon the foregoing findings of fact, the Court makes the following conclusions of law:

### Conclusions of Law.

1. The Court has jurisdiction of the subject matter of this suit under Sec. 8(e) of the Selective Service and Training Act of 1940, as amended, 50 U.S.C.Appendix, § 308(e).

2. The contractual status of petitioner was that of an independent contractor and as such, petitioner is outside the scope of the provisions of Sec. 308 of the Selective Training and Service Act of 1940, as amended. Petitioner has failed to show that prior to his induction in the United States Army, he held a position in the employ of the respondent company, and therefore, his petition must be denied.

3. That even if petitioner were to be treated as an employee of respondent, the circumstances of respondent have so changed since July 20, 1942, and prior to December 31, 1945, as to make it unreasonable for respondent company to reinstate petitioner, and respondent was and is now fully justified in refusing to reinstate petitioner.